607 A.2d 962

IN RE OPINION NO. 24 OF THE COMMITTEE ON
THE UNAUTHORIZED PRACTICE OF LAW.

Argued February 4, 1992—Decided May 14, 1992.

*Robert I. Ansell* argued the cause for appellants Independent Paralegals and/or Legal Assistants Doing Business in the State of New Jersey (*Ansell, Zaro, Bennett & Kenney*, attorneys; *Robert I. Ansell* and *Brian E. Ansell*, of counsel and on the brief).

*Nancy Kaplen Miller*, Deputy Attorney General, argued the cause for respondent Committee on the Unauthorized Practice of Law (*Robert J. Del Tufo*, Attorney General of New Jersey, attorney; *Mary C. Jacobson*, Deputy Attorney General, of counsel).

*Francis J. Gilbertson* submitted a brief on behalf of *amici curiae* National Association of Legal Assistants, Inc. and the Legal Assistants Association of New Jersey (an affiliate of National Association of Legal Assistants, Inc.) (*Keith, Winters & Wenning,* attorneys; *Francis J. Gilbertson* and *Lawrence R. Jones,* on the brief).

*John J. Markwardt* submitted a brief on behalf of *amici curiae* The National Federation of Paralegal Associations, Inc., and the American Association for Paralegal Education (*Markwardt & Katkocin,* attorneys; *Ronald M. Katkocin,* on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

The New Jersey Supreme Court Committee on the Unauthorized Practice of Law (the "Committee") concluded in Advisory Opinion No. 24, 126 *N.J.L.J.* 1306, 1338 (1990), that "paralegals functioning outside of the supervision of an attorney-employer are engaged in the unauthorized practice of law." Petitioners are several independent paralegals whom attorneys do not employ but retain on a temporary basis. They ask the Court to disapprove the Advisory Opinion.

Like paralegals employed by attorneys, independent paralegals retained by attorneys do not offer their services directly to the public. Nonetheless, the Committee determined that independent paralegals are engaged in the unauthorized practice of law because they are performing legal services without adequate attorney supervision. We agree with the Committee that the resolution of the issue turns on whether independent paralegals are adequately supervised by attorneys. We disagree with the Committee, however, that the evidence supports a categorical ban on all independent paralegals in New Jersey.

I

The Committee received inquiries from various sources regarding whether independent paralegals were engaged in the

unauthorized practice of law. Pursuant to its advisory-opinion powers under *Rule* 1:22–2, the Committee solicited written comments and information from interested persons and organizations.

In response, the Committee received thirty-seven letters from a wide variety of sources. Additionally, the State Bar Association's Subcommittee on Legal Assistants ("Legal Assistant Subcommittee"), the National Association of Legal Assistants ("NALA"), and the National Federation of Paralegal Associates ("NFPA") provided the Committee with information on regulation, education, certification, and the ethical responsibilities of paralegals.

The Committee characterized the information that it received in two ways: first, the material expressed positive views on the value of the work performed by paralegals; second, all of the materials expressly or implicitly recognized that the work of paralegals must be performed under attorney supervision. None distinguished between paralegals employed by law firms and those functioning as independent contractors offering services to attorneys. Several recurring themes played throughout the submissions:

1. One need not be a full- or part-time employee of a single attorney to be under the direct supervision of an attorney and independent paralegals in particular work under the direct supervision of attorneys.

2. Independent paralegals provide necessary services for sole practitioners and small law firms who cannot afford to employ paralegals on a full-time basis.

3. Independent paralegals confer an invaluable benefit on the public in the form of reduced legal fees.

4. Independent paralegals maintain high standards of competence and professionalism.

5. Rather than exacting a *per se* prohibition, the Committee should consider regulations or standards or other alternative forms of guidance, such as licensure and certification.

6. A blanket prohibition on independent paralegals would work a disservice to the paralegals and the general public.

After receiving those submissions, the Committee held a hearing at which four independent paralegals, three employed paralegals, and three attorneys testified. All the independent

paralegals testifying before the Committee were well qualified. One independent paralegal noted that as an NALA member she is bound by both the *ABA Model Code of Professional Responsibility* and the ABA *Model Rules of Professional Conduct.* The independent paralegals stated that although they had worked with many attorneys during their careers, they had worked solely for those attorneys and only under their direct supervision.

The independent paralegals gave several reasons for being retained by attorneys. First, attorneys may be understaffed at any time and may need to devote additional resources to one case. Second, attorneys may need paralegal assistance but be unable to afford a full-time paralegal. Third, attorneys may hire independent paralegals who have expertise in a given field.

Client contact varied for each independent paralegal. Some see the attorney's client in the attorney's office, while others meet outside of the office. One paralegal testified that she carefully ensures that clients understand that she is not an attorney and that she cannot, as a paralegal, answer legal questions.

The independent paralegals correspond with clients on behalf of attorneys, using the attorney's or law firm's letterhead, which is usually kept in the paralegal's office. Although the paralegals noted that the attorneys generally receive copies of any correspondence, one paralegal testified that she did not provide copies of all correspondence to the attorneys. Another paralegal stated that some attorneys authorized her to send out letters without their prior review. All the paralegals pointed out that they use computer technology, which facilitates rapid transmission of letters and other written material to their supervising attorneys to review, correct, and return.

Three paralegals who were full-time employees of law firms also testified before the Committee. Each paralegal represented a paralegal organization, such as NFPA or NALA. They explained that many independent paralegals are members of

those organizations and that both organizations have developed guidelines and standards for their paralegal members. In addition, NALA conducts a certification examination that takes over two days and requires extensive knowledge of a variety of legal matters.

All three employed paralegals expressed support for independent paralegals who work under the direct supervision of an attorney and who do not provide services directly to the public.

Two attorneys appeared before the Committee. One testified that as long as attorneys supervise independent paralegals, that those paralegals do not work full-time for one attorney or firm does not matter. The second attorney, a sole practitioner, testified that independent paralegals provide many benefits to both small firms and the general public alike. The Committee, he suggested, should focus on others, known as "legal technicians" or "forms practitioners," who offer their services directly to the public, rather than on independent paralegals who do not offer their services directly to the public but who are retained by attorneys.

## II

After the hearing, the Committee issued Advisory Opinion No. 24, 26 *N.J.L.J.* 1306 (1990), in which it compared the amount of supervision attorneys exercise over employed paralegals and retained paralegals. It concluded that attorneys do not adequately supervise retained paralegals. *Id.* at 1338. The Committee linked the absence of adequate attorney supervision to several different factors.

First, the Committee raised the concern that attorneys retaining independent paralegals do not carefully select those with sufficient training and experience because the short-term working relationship does not allow the attorney enough time to discover their levels of expertise. *Id.* at 1337. In contrast, the Committee presumed that employed paralegals undergo an interview process with an attorney, and the attorney's ongoing

relationship with those paralegals allows him or her to determine whether they are qualified for the job. *Ibid.*

Second, the Committee believed that attorneys are unable to undertake reasonable efforts to insure that the conduct of independent paralegals is compatible with the attorney's professional obligations pursuant to *Rule* 5.3 of the *Model Rules of Professional Conduct* ("*RPC* 5.3"). *Ibid.* The Committee reasoned that an attorney who hires an independent paralegal could not satisfy *RPC* 5.3(c)(3), which requires an attorney to make "reasonable investigations" into a paralegal's misconduct. *Ibid.* That conclusion was based on the Committee's perception that the relationship between an attorney and an independent paralegal is more distant than the one between an attorney and a full-time employed paralegal. *Ibid.*

Third, the Committee maintained that the relationship between attorneys and independent paralegals would cause significant conflicts of interest because the independent paralegal could work for numerous law firms and the attorney might not be able to monitor any conflict that might arise. *Id.* at 1338.

Fourth, the Committee concluded that attorneys not sufficiently skilled in a particular area of the law who charge a fee for the work done by the paralegal violate attorney-ethics considerations by assisting in the unauthorized practice of law. *Ibid.; see also RPC* 5.5(b) (a lawyer shall not assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law). The Committee observed that attorneys cannot supervise an independent paralegal who is working in a field that is unfamiliar to the attorney. Op. No. 24, *supra,* 126 *N.J.L.J.* at 1338. It suggested as an alternative that sole practitioners could seek assistance in substantive legal matters from specialist attorneys or law firms rather than from independent paralegals. *Ibid.*

Fifth, and finally, the Committee was troubled by correspondence and communication between attorneys and independent paralegals. The Committee was distressed to learn that parale-

gals had sent out letters on firm stationary without prior review by the attorney, creating potential for misunderstanding by the general public. *Ibid.*

The Committee summarized its findings as follows:

When the paralegal is employed by the attorney, the nature of the employment relationship makes it possible for the attorney to make the decisions as to which matters are appropriate for handling by the paralegal and which matters require direct hands-on work by the attorney. When the attorney and the paralegal are separated both by distance and the independent nature of the paralegal's relationship with the attorney, the opportunity for the exercise of that most important judgment by the attorney becomes increasingly difficult.

This is not to say that there are not matters that could be handled by an independent paralegal with appropriate supervision by the attorney contracting with the paralegal. The problem is that the decisions as to what work may be done by the paralegal should be the attorney's to make but the distance between attorney and paralegal mandated by the independent relationship may result in the making of those decisions by the paralegal or by default.

It is the view of the Committee, moreover, that the paralegal practicing in an independent paralegal organization, removed from the attorney both by distance and relationship, presents far too little opportunity for the direct supervision necessary to justify handling those legal issues that might be delegated. Without supervision, the work of the paralegal clearly constitutes the unauthorized practice of law. We found, from the testimony and materials presented to our Committee, that the opportunity for supervision of the independent paralegal diminishes to the point where much of the work of the independent paralegal, is, in fact, unsupervised. That being the case, the independent practice by the paralegal must involve the unauthorized practice of law. The fact that some of the work might actually be directly supervised cannot justify the allowance of a system which permits the independent paralegal to work free of attorney supervision and control for such a large part of the time and for such a large part of the work. [*Ibid.*]

Based on those findings, the Committee concluded that attorneys are currently unable to supervise adequately the performance of independent paralegals, and that by performing legal services without such adequate supervision those paralegals are engaging in the unauthorized practice of law. *Ibid.*

We granted petitioners' request for review, ——— *N.J.* ——— (1991), and the Chairperson of the Committee granted their motion to stay the enforcement of Opinion No. 24.

### III

No satisfactory, all-inclusive definition of what constitutes the practice of law has ever been devised. None will be attempted here. That has been left, and wisely so, to the courts when parties present them with concrete factual situations. See Milton Lasher, *The Unauthorized Practice of Law*, 72 *N.J.L.J.* 341 (1949) ("What is now considered the practice of law is something which may be described more readily than defined.").

■ Essentially, the Court decides what constitutes the practice of law on a case-by-case basis. *See, e.g., New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Bds.*, 93 *N.J.* 470, 461 *A.*2d 1112 (1983) (permitting real-estate brokers to prepare certain residential-sales and lease agreements, subject to right of attorney review); *In re Education Law Center*, 86 *N.J.* 124, 429 *A.*2d 1051 (1981) (exempting non-profit corporations from practice-of-law violations); *Auerbacher v. Wood*, 142 *N.J.Eq.* 484, 59 *A.*2d 863 (E. & A.1948) (holding that services of industrial-relations consultant do not constitute practice of law).

The difficulties presented by our undefined conception of the legal practice are reflected in this Court's review of decisions of the Committee on the Unauthorized Practice of Law. For example, in *In re Application of the New Jersey Society of Certified Public Accountants*, 102 *N.J.* 231, 507 *A.*2d 711 (1986), (hereinafter *Application of CPAs*), the Court stated:

> The practice of law is not subject to precise definition. It is not confined to litigation but often encompasses "legal activities in many non-litigious fields which entail specialized knowledge and ability." Therefore, the line between permissible business and professional activities and the unauthorized practice of law is often blurred. [*Id.* at 236, 507 *A.*2d 711 (citations omitted).]

The Court in *Application of CPAs* reviewed the Committee's Opinion No. 10, 95 *N.J.L.J.* 1209 (1972), which held that a non-lawyer's preparation of an inheritance-tax return for another person constituted the unauthorized practice of law. The Court disagreed, and emphasized that "in cases involving an overlap of professional discipline we must try to avoid arbitrary classifi-

cations and instead focus on the public's realistic need for protection and regulation." *Application of CPAs, supra,* 102 *N.J.* at 237, 507 *A.*2d 711. Applying that standard, the Court modified Opinion No. 10 to permit CPAs to prepare inheritance-tax returns subject to the condition that the accountant notify the client that an attorney's review of the return would be helpful because of the legal issues surrounding its preparation. *Id.* at 241–42, 507 *A.*2d 711.

There is no question that paralegals' work constitutes the practice of law. *N.J.S.A.* 2A:170–78 and 79 deem unauthorized the practice of law by a nonlawyer and make such practice a disorderly-persons offense. However, *N.J.S.A.* 2A:170–81(f) excepts paralegals from being penalized for engaging in tasks that constitute legal practice if their supervising attorney assumes direct responsibility for the work that the paralegals perform. *N.J.S.A.* 2A:170–81(f) states:

> Any person or corporation furnishing to any person lawfully engaged in the practice of law such information or such clerical assistance in and about his professional work as, except for the provisions of this article, may be lawful, but the lawyer receiving such information or service shall at all times maintain full professional and direct responsibility to his client for the information and service so rendered.

Consequently, paralegals who are supervised by attorneys do not engage in the unauthorized practice of law.

## IV

Availability of legal services to the public at an affordable cost is a goal to which the Court is committed. The use of paralegals represents a means of achieving that goal while maintaining the quality of legal services. Paralegals enable attorneys to render legal services more economically and efficiently. During the last twenty years the employment of paralegals has greatly expanded, and within the last ten years the number of independent paralegals has increased.

Independent paralegals work either at a "paralegal firm" or freelance. Most are employed by sole practitioners or smaller

firms who cannot afford the services of a full-time paralegal. Like large law firms, small firms find that using paralegals helps them provide effective and economical services to their clients. Requiring paralegals to be full-time employees of law firms would thus deny attorneys not associated with large law firms the very valuable services of paralegals.

The United States Supreme Court, in upholding an award of legal fees based on the market value of paralegal services, stated that the use of paralegal services whenever possible "encourages cost-effective legal services * * * by reducing the spiralling cost of * * * litigation." *Missouri v. Jenkins*, 491 *U.S.* 274, 288, 109 *S.Ct.* 2463, 2471, 105 *L.Ed.*2d 229, 243 (1989) (quoting *Cameo Convalescent Center, Inc. v. Senn*, 738 *F.*2d 836, 846 (7th Cir.1984), *cert. denied*, 469 *U.S.* 1106, 105 *S.Ct.* 780, 83 *L.Ed.*2d 775 (1985)).

The Court further noted:

It has frequently been recognized in the lower courts that paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate. Such work might include locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data, checking legal citations, and drafting correspondence. Much such work lies in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal. To the extent that fee applicants under § 1988 are not permitted to bill for the work of paralegals at market rates, it would not be surprising to see a greater amount of such work performed by attorneys themselves, thus increasing the overall cost of litigation. [*Id.* at 288 n. 10, 109 *S.Ct.* at 2471–72 n. 10, 105 *L.Ed.*2d at 243 n. 10.]

New Jersey's Advisory Committee on Professional Ethics also has recognized the value of paralegals to the legal profession:

It cannot be gainsaid that the utilization of paralegals has become, over the last 10 years, accepted, acceptable, important and indeed, necessary to the efficient practice of law. Lawyers, law firms and, more importantly, clients benefit greatly by their work. Those people who perform paraprofessionally are educated to do so. They are trained and truly professional. They are diligent and carry on their functions in a dignified, proper, professional manner. [ACPE Op. 647, 126 *N.J.L.J.* 1525, 1526 (1990).]

The New Jersey State Bar Association also specifically recognizes the important role of the paralegal. On September 15, 1989, its Board of Trustees voted to allow associate membership for paralegals and legal assistants.

We also note that the American Bar Association ("ABA") has long given latitude to attorneys to employ non-lawyers for a variety of tasks. For example, Ethical Consideration 3–6 of the ABA *Model Code of Professional Responsibility* provides as follows:

A lawyer often delegates tasks to clerks, secretaries, and other lay persons. Such delegation is proper if the lawyer maintains a direct relationship with his/her client, supervises the delegated work, and has complete professional responsibility for the work product. This delegation enables a lawyer to render legal services more economically and efficiently.

The ABA has further stated, in Formal Opinion 316, that "we do not limit the kind of assistance that a lawyer can acquire *in any way* to persons who are admitted to the Bar, so long as the non-lawyers do not do things that lawyers may not do or do the things that [only] lawyers[] may do." (emphasis added).

## V

No judicial, legislative, or other rule-making body excludes independent paralegals from its definition of a paralegal. For example, the ABA defines a paralegal as follows:

A person qualified through education, training or work experience; is employed or *retained* by a lawyer, law office, government agency, or other entity; works under the *ultimate* direction and supervision of an attorney; performs specifically delegated legal work, which, for the most part, requires a sufficient knowledge of legal concepts; and performs such duties that, absent such an assistant, the attorney would perform such tasks. (emphasis added).

The ABA definition expands the role of a legal assistant to include independent paralegals, recognizing that attorneys can and do retain the services of legal assistants who work outside the law office.

New Jersey's ethics Rules also recognize independent paralegals. This Court has adopted the ABA's *Model Rules of Professional Conduct* to govern the conduct of New Jersey

State Bar members. *R.* 1:14 (adopting the ABA *Model Rules* "as amended and supplemented by the Supreme Court"). The central provision governing the attorney's use of lay employees is *RPC* 5.3:

> With respect to a nonlawyer employed *or retained by* or associated with a lawyer:
>
> (a) every lawyer or organization authorized by the Court rules to practice law in this jurisdiction shall adopt and maintain reasonable efforts to ensure that the conduct of nonlawyers *retained* or employed by the lawyer, law firm or organization is compatible with the professional obligations of the lawyer.
>
> (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
>
> (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
>
> > (1) the lawyer orders or ratifies the conduct involved;
> >
> > (2) the lawyer has direct supervisory authority over the person and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action; or
> >
> > (3) the lawyer has failed to make reasonable investigation of circumstances that would disclose past instances of conduct by the nonlawyer incompatible with the professional obligations of a lawyer, which evidence a propensity for such conduct. (emphasis added).

The emphasized language indicates that *RPC* 5.3 applies to independent retained paralegals and not just to employed paralegals.

Moreover, the comment following *RPC* 5.3 does not distinguish between employees and independent contractors, stating as follows:

> Lawyers generally employ assistants in their practice. * * * Such assistants, *whether employees or independent contractors,* act for the lawyer in rendition of the lawyer's professional services. (emphasis added).

Finally, *Rule* 4:42–9(b) implicitly recognizes that attorneys use paralegals by permitting awards of counsel fees to include costs of paraprofessional services. That Rule's definition of "legal assistant" is almost identical to that of the ABA's. The Rule, however, requires only that the paralegal operate under the direction and supervision of the attorney. It does not distinguish between an employed or retained paralegal.

## VI

■ Under both federal law and New Jersey law, and under both the ABA and New Jersey ethics Rules, attorneys may delegate legal tasks to paralegals if they maintain direct relationships with their clients, supervise the paralegal's work and remain responsible for the work product.

■ Neither case law nor statutes distinguish paralegals employed by an attorney or law firm from independent paralegals retained by an attorney or a law firm. Nor do we. Rather, the important inquiry is whether the paralegal, whether employed or retained, is working directly for the attorney, under that attorney's supervision. Safeguards against the unauthorized practice of law exist through that supervision. Realistically, a paralegal can engage in the unauthorized practice of law whether he or she is an independent paralegal or employed in a law firm. Likewise, regardless of the paralegal's status, an attorney who does not properly supervise a paralegal is in violation of the ethical Rules. Although fulfilling the ethical requirements of *RPC* 5.3 is primarily the attorney's obligation and responsibility, a paralegal is not relieved from an independent obligation to refrain from illegal conduct and to work directly under the supervision of the attorney. A paralegal who recognizes that the attorney is not directly supervising his or her work or that such supervision is illusory because the attorney knows nothing about the field in which the paralegal is working must understand that he or she is engaged in the unauthorized practice of law. In such a situation an independent paralegal must withdraw from representation of the client. The key is supervision, and that supervision must occur regardless of whether the paralegal is employed by the attorney or retained by the attorney.

We were impressed by the professionalism of the paralegals who testified before the Committee. They all understood the need for direct attorney supervision and were sensitive to potential conflict-of-interest problems. Additionally, they all

recognized that as the paralegal profession continues to grow, the need to define clearly the limits of the profession's responsibilities increases.

Those who testified voiced many of the same concerns expressed by the Committee. Indeed, Opinion No. 24 crystallized issues that both the legal profession and paralegals recognize should be addressed. The Committee enumerated five factors that are of vital importance to the profession and that confront every paralegal and every prospective employer:

(1) There have been no standards or guidelines set down by any body with regulatory authority to control and regulate the activities of independent paralegals.

(2) At least one New Jersey college provides an ABA-approved paralegal program and provides a certificate of completion to successful candidates. A bachelor of arts degree is a prerequisite to obtaining the certificate. Those requirements are applicable only to matriculating students and it is clear that no law or regulation imposes the requirement of obtaining such a certificate on students who propose to practice.

(3) Neither the state of New Jersey, any bar association, nor any organization or affiliation of paralegals or legal assistants provides for a licensing procedure or any other procedure to regulate and control the identity, training and conduct of those who engage in the work.

(4) While the ABA definition states that a legal assistant should be "qualified through education, training or work experience" which serves as a guideline for its members in the use of paralegal assistance, that requirement is not imposed or binding upon a person who desires to engage in independent paralegal practice.

(5) There is no paralegal association or organization that imposes any uniform mechanism of standards of ethics, disciplinary proceedings, and rules and regulations to oversee the activities of paralegals. Those who function as paralegals, therefore, do so pursuant to standards and rules either of their own devising or of the devising of the variety of different groups or organizations, none of which have the power to impose adherence to standards or to control or discipline those who do not adhere to standards. [Op. No. 24, *supra*, 126 *N.J.L.J.* at 1337.]

Following the introduction of *RPC* 5.3, the Practicing Law Institute correctly noted:

[M]any firms will not be prepared to shoulder [the responsibility of supervising paralegals] within their existing procedures. Accordingly, effective measures will have to be undertaken to ensure compliance. These will include not only procedures and controls, but also communication, training and education of

staff employees in the responsibilities inherent in relevant Model Rules. [PLI Order No. A4–A289 (November 1, 1989).]

Although we agree that those concerns must be addressed, we emphasize that they apply equally to employed paralegals and to independent paralegals.

Although the ABA requires that paralegals be qualified through work, education, or training, the State currently requires neither certification nor licensure for paralegals. No regulatory body exists to prevent unqualified persons from working as paralegals. However, the same is true with regard to employed paralegals.

No rule requires that either employed paralegals or independent paralegals belong to any paraprofessional organization. Thus, only those paralegals who are members of such organizations are subject to regulation. Again, the problem is not with independent paralegals but with the absence of any binding regulations or guidelines.

The same holds true with regard to ethical issues. As with other laypersons, paralegals are not subject to any ethics rules governing the practice of law. The ethical prohibitions against paralegals, *RPC* 5.3, therefore focus on the attorney's conduct. However, the language of *RPC* 5.3 applies to attorneys who both employ and retain paralegals.

Underlying many of the Committee's concerns is its belief that the attorney will not be able to comply with *RPC* 5.3 due to the lack of physical proximity to the retained paralegal. That "physical distance" led the Committee to conclude that for an attorney to maintain direct supervisory authority over an independent paralegal who often will not work in the same office as the attorney is too difficult.

We recognize that distance between the independent paralegal and the attorney may create less opportunity for efficient, significant, rigorous supervision. Nonetheless, the site at which the paralegal performs services should not be the determinative factor. In large law firms that have satellite offices,

an employed paralegal frequently has less face-to-face contact with the supervising attorney than would a retained paralegal.

Moreover, in this age of rapidly-expanding instant communications (including fax tele-transmissions, word processing, computer networks, cellular telephone service and other computer-modem communications), out-of-office paralegals can communicate frequently with their supervising attorneys. Indeed, as technology progresses, there will be more communication between employers and employees located at different sites, even different states. That arrangement will be helpful to both the paralegal and the attorney. Parents and disabled people, particularly, may prefer to work from their homes. Sole practitioners and small law firms will be able to obtain the services of paralegals otherwise available only to large firms.

Moreover, nothing in the record before the Committee suggested that attorneys have found it difficult to supervise independent paralegals. Indeed, the paralegals testified that the use of word processing made an attorney's quick review of their work possible. Most of the independent contractors who testified worked under the supervision of attorneys with whom they had regular communication.

Although a paralegal's unsupervised work does constitute the unauthorized practice of law, that issue is not unique to independent paralegals. Rather, we emphasize again, it is the lack of educational and regulatory standards to govern their practice that is at the heart of the problem.

Regulation may also solve another ethical problem—conflicts of interest. We agree with the Committee's observation that

[t]he appearance of and potential for conflict will increase dramatically when independent paralegals offer their services to multiple law firms to assist them in litigated matters. Although the paralegal may be sensitive to avoid functioning for two adversary attorneys in the same case, the potential for conflict increases in the same magnitude as is represented by the number of different law firms represented by the one paralegal * * *. The problem is exacerbated to a point which may not be controllable when the relationships multiply by virtue of a single, independent paralegal representing multiple law firms. [Op. No. 24, *supra*, 126 *N.J.L.J.* at 1338.]

However, the paralegals who testified were aware of potential conflict situations. An independent paralegal explained that she keeps accurate records on each attorney's clients:

MS. SECOL: I have—I have all my files—they're all logged and noted. I have a list of all of the files for each attorney.

    *     *     *     *     *     *     *     *

Moreover, in Opinion No. 647 the Advisory Committee on Professional Ethics recognized that paralegals are extremely aware of the potential ethical dilemmas of the legal profession:

[Paralegals] understand ethical inhibitions and prohibitions. Lawyers assign them work expecting them to respect confidences which they obtain and to comport themselves in the best traditions of those who serve in the legal area * * *. It is too late in the day to view these paraprofessionals with suspicion of their morals or ethics. [ACPE Op. 647, *supra*, 126 *N.J.L.J.*, *supra*, at 1526.]

Nonetheless, we recognize that because independent paralegals are retained by different firms and lawyers, a potential conflict exists. For example, the Advisory Committee on Professional Ethics has noted that "[h]iring a paralegal formerly employed by a firm with which the prospective employer presently is involved in adversarial matters would clearly be improper." In re Opinion No. 546 of the Advisory Committee on Ethics, 114 *N.J.L.J.* 496 (1984). Opinion No. 546 is extremely brief, however, and does not detail the circumstances under which such employment would be improper.

The ABA, however, has also considered whether an employing firm can be disqualified by a change in employment of a non-lawyer employee, specifically a paralegal, in Informal Ethics Opinion 88–1526 (June 22, 1988). The ABA determined that such firms can be disqualified unless they thoroughly screen the paralegal and ensure that the paralegal reveals no information relating to the representation of the client at the former firm to any person in the employing firm. The ABA also noted its concern that paralegals could potentially lose the ability to earn a livelihood if they were prevented from working for different law firms:

It is important that nonlawyer employees have as much mobility in employment opportunities as possible consistent with the protection of clients' interests. To

so limit employment opportunities that some nonlawyers trained to work with law firms might be required to leave the careers for which they are trained would disserve clients as well as the legal profession. Accordingly, any restrictions on the nonlawyer's employment should be held to the minimum necessary to protect the confidentiality of client information.

We again conclude that regulations and guidelines can be drafted to address adequately the conflict-of-interest problem. For example, as urged by paralegal associations, there could be a requirement that paralegals must keep records of each case, listing the names of the parties and all counsel. Before undertaking new employment, paralegals would check the list. Likewise, attorneys should require the paralegals to furnish them with such a list. The attorney could thus examine whether such matters would conflict with the attorney's representation of a client before retaining that paralegal. Regulation can also remedy any problems resulting from the attendant problem of paralegals sending correspondence directly to clients without the attorney's review and approval.

Although we have not incorporated use of paralegals into New Jersey Court Rules, the Advisory Committee on Professional Ethics has considered the practice of paralegals on four prior occasions, most recently in Opinion No. 647, 126 *N.J.L.J.* 1525 (1990). In that opinion the Advisory Committee on Professional Ethics held that paralegals working under the direct supervision of an attorney may carry business cards so long as the name of the attorney or firm appears on the card and the card is authorized by the attorney or law firm.

Giving to them the ability of clearly identifying themselves and for whom they work can only better serve their employers and clients. The business card, as is true in every area where business cards are used, serves to define the status of the person presenting that card and has the desired effect of eliminating confusion.

Other states, bar associations, and paralegal organizations have also begun to regulate paralegals and attorneys' use of them. A significant number of state courts have incorporated into their court rules or ethics opinions rules for the use of legal assistants. Kentucky has promulgated a Paralegal Code

of Ethics, which sets forth certain exclusions to the unauthorized practice of law:

> For purposes of this rule, the unauthorized practice of law shall not include any service rendered involving legal knowledge or advice, whether representation, counsel or advocacy, in or out of court, rendered in respect to the acts, duties, obligations, liabilities or business relations of the one requiring services where:
> A.  The client understands that the paralegal is not a lawyer;
> B.  The lawyer supervises the paralegal in the performance of his duties; and
> C.  The lawyer remains fully responsible for such representation, including all actions taken or not taken in connection therewith by the paralegal to the same extent as if such representation had been furnished entirely by the lawyer and all such actions had been taken or not taken directly by the attorney. Paralegal Code, Ky.S.Ct.R. 3.700, Sub–Rule 2.

Several states' bar associations have also promulgated guidelines to regulate the paralegal profession. For example, the Colorado Bar Association has issued a set of guidelines under which a lawyer may permit a paralegal to assist in all aspects of the lawyer's representation of a client, provided that:

> 1.  the status of the [paralegal] is disclosed at the outset of any professional relationship with a client, other attorneys, courts or administrative agencies or members of the general public;
> 2.  the lawyer establishes the attorney-client relationship, is available to the client and maintains control of all client matters;
> 3.  the lawyer reviews the [paralegal's] work product and supervises the performance of duties assigned to the [paralegal];
> 4.  the lawyer remains responsible for the services performed by the [paralegal] to the same extent as if such services had been furnished entirely by the lawyer and such actions were those of the lawyer;
> 5.  the services performed by the [paralegal] supplement, merge with and become part of the attorney's work product;
> 6.  the services performed by the [paralegal] do not require the exercise of unsupervised legal judgment; and
> 7.  the lawyer instructs the [paralegal] concerning standards of client confidentiality.

### The guidelines also provide:

> 1.  A [paralegal] may author and sign correspondence on the lawyer's letterhead, provided the [paralegal] status is indicated and the correspondence does not contain legal opinions or give legal advice.
> 2.  A [paralegal] may have a business card with the firm name appearing on it so long as the status of the legal assistant is disclosed. However, the name of the [paralegal] may not appear on the letterhead of the firm.
> 3.  A [paralegal] may conduct client interviews and maintain general contact with the client once the attorney-client relationship has been established, so

long as the client is aware of the status and duties of the [paralegal], and the client contact is authorized by the attorney.

The Colorado Bar Association has also promulgated a set of ethical requirements for the attorney who hires paralegals:

1. A lawyer shall ascertain the paralegal's abilities, limitations and training, and must limit the paralegal's duties and responsibilities to those that can be competently performed in view of those abilities, limitations and training.

2. A lawyer shall educate and train [paralegals] with respect to the ethical standards which apply to the lawyer.

3. A lawyer is responsible for monitoring and supervising the conduct of [paralegals] to prevent the violation of the ethical standards which apply to the lawyer, and the lawyer is responsible for assuring that [paralegals] do not do anything which the lawyer could not do.

4. A lawyer shall continuously monitor and supervise the work of [paralegals] in order to assure that the services rendered by the [paralegals] are performed competently and in a professional manner.

5. A lawyer is responsible for assuring that the [paralegal] does not engage in the unauthorized practice of law.

6. A lawyer shall assume responsibility for the improper conduct of [paralegals] and must take appropriate action to prevent recurrence of improper behavior or activities.

7. [Paralegals] who deal directly with lawyers' clients must be identified to those clients as non-lawyers, and the lawyer is responsible for obtaining the understanding of the clients with respect to the role of and the limitations which apply to those assistants.

The Michigan, Missouri, and New York Bar Associations have adopted similar requirements.

Additionally, two of the largest paralegal associations have proposed standards for paralegals. NALA has developed an examination procedure for certifying paralegals and has developed ethics guidelines for their work, and NFPA has developed a detailed list of "Paralegal Responsibilities" and maintains a repository of the latest state-by-state statutory and case developments regulating the use of paralegals.

## VII

Regulation and guidelines represent the proper course of action to address the problems that the work practices of all paralegals may create. Although the paralegal is directly accountable for engaging in the unauthorized practice of law

and also has an obligation to avoid conduct that otherwise violates the Rules of Professional Conduct, the attorney is ultimately accountable. Therefore, with great care, the attorney should ensure that the legal assistant is informed of and abides by the provisions of the Rules of Professional Conduct.

Although an attorney must directly supervise a paralegal, no rational basis exists for the disparate way in which the Committee's opinion treats employed and independent paralegals. The testimony overwhelmingly indicates that the independent paralegals were subject to direct supervision by attorneys and were sensitive to potential conflicts of interest. We conclude that given the appropriate instructions and supervision, paralegals, whether as employees or independent contractors, are valuable and necessary members of an attorney's team in the effective and efficient practice of law.

Subsequent to the issuance of the Committee's decision, the State Bar Association forwarded a resolution to this Court requesting the establishment of a standing committee on paralegal education and regulation. We agree that such a committee is necessary, and will shortly establish it to study the practice of paralegals and make recommendations. The committee may consider guidelines from other states, bar associations, and paralegal associations in formulating regulations for New Jersey paralegals. Any such regulations or guidelines should encourage the use of paralegals while providing both attorneys and paralegals with a set of principles that together with the Rules of Professional Conduct can guide their practices. The guidelines drafted will not be static but subject to modification as new issues arise.

We modify Opinion No. 24 in accordance with this opinion.

*For modification*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, GARIBALDI and STEIN—6.

*Opposed*—None.