**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5441-17T2

LAW OFFICE OF
GERARD C. VINCE,
LLC,

      Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and DARLA J. DIMATTEO,

      Respondents.

_____

> Argued May 21, 2019 – Decided September 3, 2019
>
> Before Judges Suter and Geiger.
>
> On appeal from the Board of Review, Department of Labor, Docket No. 145,463.
>
> Gerard C. Vince, II argued the cause for pro se appellant.
>
> Daniel Pierre, Deputy Attorney General, argued the cause for respondent Board of Review (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton

Schaffer, Assistant Attorney General, of counsel; Daniel Pierre, on the brief).

Respondent Darla J. DiMatteo has not filed a brief.

PER CURIAM

The Law Office of Gerard C. Vince, LLC (law firm), appeals from a decision of the Department of Labor and Workforce Development's Board of Review (Board). The Board affirmed a finding that claimant Darla J. DiMatteo, a certified paralegal, was an employee—and not an independent contractor—of the law firm when her services were terminated. As an employee, she was entitled to unemployment compensation benefits. We reverse the Board's decision because there was substantial credible evidence that she was an independent contractor and not an employee of the law firm.

DiMatteo filed a claim for unemployment benefits in November 2017 after the law firm terminated her services. She had been hired by the law firm to integrate its files into a web-based computer software system called "LEAP." The law firm was licensed to use the software system, which could be accessed through the web using any computer, not just those at the law firm. The law firm would identify the files to be integrated into LEAP, but did not instruct DiMatteo on how to perform the actual integration of the files into the LEAP system.

2

The law firm confirmed in its Consulting Paralegal Understanding (CPU) with DiMatteo that she was "being contracted as a consulting paralegal." In the CPU, the law firm confirmed with her that this was a "temporary consultancy" for three to six months to be paid weekly at twenty dollars per hour based on invoices that DiMatteo would present to the law firm. It would not pay "telephone, computer expenses, insurance, travel, equipment leases unless otherwise agreed to in writing." DiMatteo was required to pay taxes at the end of the year including "any self-employment tax, workers' compensation or the like . . . ." The CPU stated, "you agree by acting as a consultant that you are an independent contractor and as such are not an employee and shall not enter into any contract or agreement on behalf of the company. You understand that you are not subject to receive unemployment or other employee related benefits." One week before her services were terminated, DiMatteo signed a "consultation confirmation" form where she acknowledged she would receive a 1099 tax form from the law firm and then pay all taxes relative to her "consultancy."

DiMatteo integrated files into the LEAP system from May 9, 2017 to October 13, 2017, when her services were terminated. She filed for unemployment. In March 2018, the Department's Deputy found she was eligible

for benefits. The law firm appealed to the Appeal Tribunal. A hearing was conducted in April 2018 in which DiMatteo did not participate.

The Appeal Tribunal held that DiMatteo was entitled to unemployment benefits under N.J.S.A. 43:21-19(i)(6), as an employee of the law firm. It found that the CPU was not determinative of whether the law firm was an employer under the unemployment law. Instead, the Appeal Tribunal considered DiMatteo's actual working relationship with the law firm. It found DiMatteo reported once or twice a week to the law firm to download files, the LEAP system was controlled by the law firm, and DiMatteo's job function was a "requisite part of the claimant's duties as a [c]onsulting [p]aralegal." It found the law firm "did not prevent [DiMatteo] from accepting work with other employers." She used her own vehicle for transportation and there was no dress code that she needed to follow.

Although DiMatteo was "free to make her own hours and days," the Appeal Tribunal noted she was "required to report to her employer's work location on a somewhat regular basis in order to perform at least a mandatory portion of her job duties, specifically the downloading of business files into the employer's software litigation program." It found she would not have been able to do this "without access to the employer's software, which the employer

controlled." It found DiMatteo was not "fully free from control of her work service contract" because she was "required to drive to the employer's work location in order to complete these mandatory tasks." The Appeal Tribunal, concluded that the law firm did not prove DiMatteo was an independent contractor.

The law firm appealed to the Board, which affirmed the Appeal Tribunal. The Board supplemented the Appeal Tribunal's decision to address two parts of the "ABC" test set forth in N.J.S.A. 43:21-19(i)(6). Under part "A", the Board found "[a]lthough the claimant had some flexibility as to when and where the work was performed, it was the employer who assigned specific tasks to the claimant." Under part "B", the Board found that DiMatteo "was performing paralegal work for a law firm," and she was an employee "as the work performed by the claimant was essential to the services provided by that type of business." Because the law firm did not satisfy either part A or B of the ABC test, the Board did not analyze part C.

On appeal, the law firm argues that DiMatteo was an independent contract consultant and not an employee. It asserts the Appeal Tribunal and Board made certain findings that are not accurate. For instance, the law firm did not own the LEAP software program; this was a web-based program the law firm could

access. Also, it was DiMatteo who set the rate of her pay, not the law firm, and she issued invoices to the law firm for payment. DiMatteo was not required to work at the office. She came in once or twice a week, but could work on the program remotely. She indicated to the law firm that she performed services for other entities during the time she worked there. DiMatteo advertised her services to the public. The law firm contends that because DiMatteo was a certified paralegal, it had to exercise some level of control as required by the Rules of Professional Conduct and by the Supreme Court in In re Opinion No. 24, 128 N.J. 114 (1992). However, it did not determine the pathway for her to integrate the files into the LEAP system. The law firm argues the integration of these files into LEAP was not essential to the services that it performed as a law firm to its clients.

Our review of an agency's decision is limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (citing Pub. Serv. Elec. v. N.J. Dep't of Envtl Prot., 101 N.J. 95, 103 (1985)). "If the Board's factual findings are supported 'by sufficient credible evidence, courts are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Review, 91 N.J. 453, 459 (1982)). We will not intervene unless the Board's decision is "arbitrary, capricious, or unreasonable." Ibid.

A-5441-17T2

The ABC test, referring to the three subparagraphs of N.J.S.A. 43:21-19(i)(6), is used to determine if a person is an independent contractor for purposes of the Unemployment Compensation Law (UCL), N.J.S.A. 43:21-1 to -24.30. A person is presumed to be an employee unless the employer satisfies each part of the ABC test. Hargrove v. Sleepy's, LLC, 220 N.J. 289, 305 (2015). The statute provides as follows:

> Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter ([N.J.S.A. 43:21-1 to -71]) unless and until it is shown to the satisfaction of the division that:
>
> (A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
>
> (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
>
> (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.
>
> [N.J.S.A. 43:21-19(i)(6).]

In Hargrove, the Court explained the considerations under each part of the test.

A-5441-17T2

In order to satisfy part A of the "ABC" test, the employer must show that it neither exercised control over the worker, nor had the ability to exercise control in terms of the completion of the work. In establishing control for purposes of part A of the test, it is not necessary that the employer control every aspect of the worker's trade; rather, some level of control may be sufficient.

Part B of the statute requires the employer to show that the services provided were "either outside the usual course of the business . . . or that such service is performed outside of all the places of business of the enterprise." While the common law recognizes part B as a factor to consider, it is not outcome determinative within the confines of the "right to control" test.

Part C of the statute is also derived from the common law. This part of the test "calls for an enterprise that exists and can continue to exist independently of and apart from the particular service relationship. The enterprise must be one that is stable and lasting—one that will survive the termination of the relationship." Therefore, part C of the "ABC" test is satisfied when an individual has a profession that will plainly persist despite the termination of the challenged relationship. When the relationship ends and the individual joins "the ranks of the unemployed," this element of the test is not satisfied.

[Id. at 305-06 (citations omitted).]

The terms of the contract are not controlling on the issue of whether the person is an independent contractor. Phila. Newspapers Inc. v. Bd. of Review, 397 N.J. Super. 309, 321-22 (App. Div. 2007). This is a "fact-sensitive" analysis

where the substance, not the form of the relationship, is reviewed. Carpet Remnant Warehouse, Inc. v. N.J. Dep't of Labor, 125 N.J. 567, 581-82 (1991).

We are constrained to reverse the Board's decision because there was substantial credible evidence that the law firm satisfied the ABC test. Under part A of the ABC test, there was no evidence the law firm exercised any more control over DiMatteo as a paralegal than required by the Rules of Professional Conduct. RPC 5.3. Other than selecting the files to be reviewed, there was no evidence the law firm controlled or directed how she was to perform the work. The Court's opinion in Opinion No. 24, 128 N.J. at 127-30, contemplated that a paralegal could be an employee or an independent contractor.[1] Under either scenario, attorneys who delegated legal tasks to paralegals had to "maintain direct relationships with their clients, supervise the paralegal's work and remain responsible for the work product." Id. at 127. Therefore, some direction and control was required by the Court for the paralegal to avoid allegations of unauthorized practice of law and for the attorney to satisfy the RPCs. Under the Board's analysis, a paralegal could never be an independent contractor because of the control that an attorney must have to avoid a finding of unethical conduct.

---

[1] In Hawkins v. Harris, 141 N.J. 207, 221 (1995), the Court described Opinion No. 24 as "reminding attorneys of their responsibility to supervise paralegals, whether employees or independent contractors."

The CPU contemplated there would be an independent contractor relationship. DiMatteo was to receive a 1099 and pay her own taxes. She did not receive any specific training from the law firm. She set the rate of her pay, advertised her services to the public and worked with other businesses while at the law firm. The law firm did not require her to follow a dress code or to report to the office for specific hours. It was not disputed that "she had no specific hours" or "times that she had to be made available, she came and went . . . as she pleased, and the hours all fluctuated." Therefore, the evidence showed that the law firm did not control or direct her performance or how she performed her work.

Under part B, it was not disputed that the work could have been performed at any location. In fact, the record substantiates that some work was performed off-site. The invoices show she was paid between $500 and $700 per week. At twenty dollars per hour, her weekly hours significantly exceeded the one to two days per week that she was in the office. Moreover, the work did not involve specific clients or tasks typically performed by a paralegal, and could be considered outside the usual course of business for the law firm.

Part C was not analyzed by the Board, but there was evidence that DiMatteo was a certified paralegal who worked for other businesses, came and went as she pleased and advertised her services as a certified paralegal.

The Board found the law office did not satisfy the ABC test but did so without full consideration of the undisputed evidence in the record. We are constrained to reverse the Board's decision that DiMatteo was an employee entitled to unemployment benefits having found unrebutted evidence that the law firm satisfied the ABC test set forth in N.J.S.A. 43:21-19(i)(6).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5441-17T2