937 A.2d 318

PHILADELPHIA NEWSPAPERS, INC., APPELLANT v. BOARD
OF REVIEW AND JERRY M. BROOKS, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 5, 2007—Decided December 31, 2007.

Before Judges WEISSBARD, GILROY and BAXTER.

*Thomas J. Cafferty,* argued the cause for appellant (*Scarinci & Hollenbeck,* attorneys; *Mr. Cafferty,* of counsel and on the brief; *Christine M. Vanek,* on the brief).

*Alan C. Stephens,* Deputy Attorney General, argued the cause for respondent Board of Review (*Anne Milgram,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Mr. Stephens,* on the brief).

Respondent Jerry Brooks did not file a brief.

The opinion of the court was delivered by

GILROY, J.A.D.

Appellant, Philadelphia Newspapers, Inc. (PNI), appeals from the May 31, 2006, Final Decision of the Board of Review (Board) that confirmed the October 24, 2005, decision of the Appeal Tribunal, determining claimant Jerry Brooks eligible for unemployment benefits from May 29, 2005 to July 23, 2005. The issue presented on appeal is whether claimant was an independent contractor or an employee of PNI when claimant's contract as a home delivery newspaper person was terminated by PNI. Because we determine that PNI failed to prove that claimant was an independent contractor, as that exemption to employment is determined under the three prong standard of *N.J.S.A.* 43:21–19(i)(6)(A)(B)(C) (the ABC Test), we affirm.

PNI is the publisher of the Philadelphia Daily News and The Philadelphia Inquirer. In July 2003, PNI engaged claimant's services to deliver the two newspapers to PNI's home delivery customers along a designated delivery route in southern New Jersey. When initially engaged by PNI, and for each year thereafter, claimant was required to execute an "Independent Home Delivery Service Contractor Agreement" (Agreement), an eighteen-paragraph document prepared by PNI. The Agreement designated claimant as an "Independent Service Contractor" re-

sponsible for delivering various publications of PNI, including The Philadelphia Inquirer and the Philadelphia Daily News "in good condition and on a timely basis to certain of its own delivery subscribers ... [and] to collect amounts owed to PNI by its subscribers and, on behalf of PNI, to solicit new subscriptions to The Inquirer and Daily News...."

Paragraph 1A of the Agreement designated claimant as "a self-employed independent contractor and not an employee of PNI," who "was free to engage in any other business activities [claimant] desires (including services for other publications) so long as they do not interfere with the timely delivery of The Inquirer and the [p]eriodicals and [claimant's] performance of the terms of this Agreement...." Pursuant to that same paragraph, claimant had "the right to operate [his] business as [he] chooses and shall engage [his] own sub-contractors or employees as [he] considers necessary or desirable ... and [he] shall exercise the sole and exclusive management and or supervision of all such persons or entities."

Under Paragraph 1C, "[claimant] agrees to maintain at [his] own expense, levels of automobile and general liability insurance, as required by applicable laws, covering all vehicles used in the operation of [his] business and all of [his] operations and premises."

As to the deliveries, Paragraph 3 of the Agreement provided that "[claimant] will be responsible for employing and/or contracting with sufficient personnel and providing the equipment necessary to accomplish the delivery services required hereunder." Although the Agreement provided that claimant was to "use [his] best efforts to deliver a dry and undamaged newspaper in a location convenient to the reasonable expectations of the subscriber" no later than 6:00 A.M. on weekdays; 7:00 A.M. on Sundays; and 8:00 A.M. on Saturdays for the "Sunday Advanced Package," nothing prohibited claimant from delivering the newspapers earlier than the aforesaid times, except for the "Sunday Advanced Package," which was not to be delivered earlier than 12:01 A.M.

Saturday. Claimant was free to engage other individuals to assist in the delivery of the newspapers and use any method of transportation that he desired. The only supplies, other than the newspapers, provided by PNI were plastic bags to protect the newspapers from rain.

As to payment for services rendered, Paragraph 7 of the Agreement provided that claimant would not receive a salary, but rather a fixed fee for each newspaper or periodical delivered. In accordance with the Agreement, designating claimant as an independent contractor, Paragraph 1G provided in relevant part:

[Claimant] agrees that [he] shall be solely responsible for the payment of any federal, state, social security, or local income and self[-]employment taxes including, but not limited to, unemployment insurance taxes and workers' compensation contributions, with respect to the services provided under this Agreement. PNI will not treat [claimant] as an employee for any purpose, including federal tax purposes. PNI will not withhold any taxes or prepare W–2 Forms for [claimant] but will provide [claimant] with a Form 1099, if required by law. [Claimant] agrees that [he] will not receive, or be eligible for, any employee benefits of any type as a result of performing services under this Agreement. By [claimant's] signature below, [he] waives all rights, if any, to such benefits. The fees payable to [claimant] under this Agreement have been established on the basis that [he] is an independent contractor and is responsible for the payment of all taxes, payments or contributions described above, and as otherwise pertains to the conduct of [his] business.

Paragraph 3E of the Agreement provided that claimant's fulfillment of his contractual obligations would be determined by the number of complaints received in relation to the number of publications delivered. More than two complaints per thousand for Sunday newspapers delivered, and one complaint per thousand for daily newspapers delivered constituted a material breach of the Agreement by claimant. Lastly, Paragraphs 12, 13, and 14 of the Agreement prohibited either party from terminating the Agreement without providing thirty days' written notice to the other party, except in cases of a material breach of the Agreement as defined therein.

On April 24, 2005, PNI, through its District Sales and Circulation Manager Ron Clemson, Jr., notified claimant that he was in a material breach of the Agreement for failure to ensure on-time

delivery. The notice placed claimant on a thirty-day probationary period to improve his delivery performance. At the end of that period, Clemson would "thoroughly examine [his] progress, or decline, and reach a determination in regards to [his] future with The Philadelphia Inquirer." Because Clemson determined that claimant's failure in delivering the newspapers timely had continued, PNI terminated the Agreement, effective May 29, 2005.

Claimant filed for unemployment benefits on June 24, 2005. A Deputy Director found him eligible for benefits from June 2, 2005. PNI appealed, and the Appeal Tribunal conducted a hearing on July 26, 2005. On July 27, 2005, the Appeal Tribunal affirmed the Deputy's decision, determining claimant eligible for benefits without disqualification from May 29, 2005. On August 4, 2005, PNI appealed the decision to the Board. On October 7, 2005, the Board remanded the matter for additional testimony "from the claimant and the employer regarding whether claimant was employed as defined by *N.J.S.A.* 43:21–19(i)(6) and whether the claimant's discharge was for misconduct connected with the work." On October 20, 2005, the Appeal Tribunal conducted a second hearing in accordance with the Board's remand. On October 24, 2005, the Appeal Tribunal again determined that claimant was an employee of PNI under the three-prong standard of the ABC Test:

> In this case, substantial evidence indicates the claimant was under the direction and control of the above employer. The employer's contention that the claimant was an independent contractor because he deducted his fuel costs and some other expenses on his income tax return is rejected by this Tribunal. The fact that claimant was paid on a 1099 form does not mean he was an independent contractor in accordance with *N.J.S.A.* 43:21–19(i)(6). The claimant was not engaged in an independently established trade and was in subject employment.

PNI again appealed to the Board. On May 31, 2006, the Board issued its final decision affirming the Appeal Tribunal's determination.

Three witnesses testified before the Appeal Tribunal: claimant, Clemson, and Peter Pfluger, PNI's Circulation Director of Home Delivery Sales. Claimant testified as follows. Prior to May 29, 2005, claimant had been employed as a contract home delivery

newspaper person by PNI. Although employed by PNI to deliver the Philadelphia Daily News and The Philadelphia Inquirer to approximately 340 of PNI home delivery customers, claimant also delivered copies of the USA Today and The Wall Street Journal newspapers. All four newspapers were supplied to claimant by PNI, and claimant was paid by PNI for delivery of all the newspapers. Claimant confirmed that he was not mandated by PNI concerning what time he had to pick up and bag the newspapers, as long as the newspapers were delivered to the customers by the time specified in the Agreement.

Claimant acknowledged that in lieu of a Federal W–2 Tax Form, he had received a Federal 1099–Tax Form, which he filed with his individual tax returns, stating that he was an independent contractor. When filing his tax returns, claimant claimed automobile expense deductions for using his automobile when delivering the newspapers. While delivering newspapers for PNI, claimant never advertised himself as a newspaper delivery person, nor carried or distributed business cards indicating his employment. Claimant never previously delivered any newspapers before commencing work with PNI; and after termination, he has not delivered newspapers for any other publishers. Concerning the delivery of the newspapers, claimant acknowledged that he was free to deliver the newspapers along the route as he deemed appropriate, not in any particular sequence directed by PNI. Lastly, after receiving the warning letter of April 24, 2005, claimant was terminated by Clemson because PNI had received "[t]oo many customer complaints."

Clemson testified that claimant was an independent contractor for PNI who delivered newspapers published by PNI, as well as The Wall Street Journal and USA Today, to PNI's home delivery customers pursuant to the Agreement. The papers had to be delivered by 6:30 A.M. on weekdays, Monday through Friday, and by 7:00 A.M. on Saturday and Sunday. Claimant was free to pick up the newspapers from PNI's distribution center at any time, provided that pickup did not occur earlier than 1:00 A.M. and that

the newspapers were delivered timely. Claimant was neither reimbursed by PNI for expenses relating to his automobile, nor provided with any health insurance. Clemson terminated claimant's employment on May 29, 2005, after claimant failed to respond to the warning letter that he had delivered to claimant on April 24, 2005, concerning complaints that PNI had received from its customers. Claimant was not subject to a dress code and was paid in accordance with the Agreement on a per delivery basis.

Peter Pfluger testified that he had no personal knowledge why claimant had been terminated. Pfluger identified the Agreement as one that was executed by all of PNI's home delivery newspaper persons, including claimant. PNI does not keep track of each home delivery person's time, nor does it direct the method by which each home delivery newspaper person accomplishes the work. Pfluger confirmed that claimant was not provided with a Federal W–2 tax form, but only a Federal 1099 tax form, and no deductions were made from his compensation for unemployment or withholding taxes.

On appeal, PNI argues:

POINT ONE.

THIS COURT SHOULD CONCLUDE THAT THE BOARD OF REVIEW ERRED IN AFFIRMING THE DECISION OF THE APPEAL TRIBUNAL SINCE BROOKS IS AN INDEPENDENT CONTRACTOR WHO IS NOT ENTITLED TO UNEMPLOYMENT BENEFITS UNDER NEW JERSEY LAW.

POINT TWO.

THIS COURT SHOULD CONCLUDE THAT BROOKS IS ESTOPPED FROM CLAIMING THAT HE IS AN EMPLOYEE RATHER THAN AN INDEPENDENT CONTRACTOR.

POINT THREE.

THIS COURT SHOULD CONCLUDE THAT THE BOARD OF REVIEW'S DETERMINATION THAT BROOKS IS ENTITLED TO UNEMPLOYMENT COMPENSATION WAS UNREASONABLE AND WAS UNSUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD BELOW.

Appellate courts have a limited role in reviewing decisions of an administrative agency. *Campbell v. Dep't of Civil Serv.*, 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963); *State–Operated Sch. Dist. of Newark v. Gaines*, 309 *N.J.Super.* 327, 331, 707 *A.*2d 165

(App.Div.), *certif. denied,* 156 *N.J.* 381, 718 *A.*2d 1210 (1998). There should not be an independent assessment of the evidence by the appellate court. *In re Taylor,* 158 *N.J.* 644, 656, 731 *A.*2d 35 (1999). The appellate court must accord a strong presumption of reasonableness to the decision of an administrative agency. *Smith v. Ricci,* 89 *N.J.* 514, 525, 446 *A.*2d 501 (1982); *City of Newark v. Natural Res. Council,* 82 *N.J.* 530, 539, 414 *A.*2d 1304, *cert. denied,* 449 *U.S.* 983, 101 *S.Ct.* 400, 66 *L. Ed.*2d 245 (1980). Thus, the determinations of the administrative agencies must be given great deference. *State v. Johnson,* 42 *N.J.* 146, 159, 199 *A.*2d 809 (1964). We cannot overturn an agency's decision that is based on sufficient evidence, even if this court would have reached a different result. *Outland v. Bd. of Trs.,* 326 *N.J.Super.* 395, 400, 741 *A.*2d 612 (App.Div.1999). Therefore, if, in reviewing an agency decision, an appellate court finds sufficient, credible evidence in the record to support the agency's conclusions, that court must uphold those findings even if the court believes that it would have reached a different result. *Clowes v. Terminix Int'l, Inc.,* 109 *N.J.* 575, 588, 538 *A.*2d 794 (1988).

Conversely, a reviewing court is not bound to uphold an agency determination unsupported by sufficient evidence. *Henry v. Rahway State Prison,* 81 *N.J.* 571, 579–80, 410 *A.*2d 686 (1980). Courts are not to act simply as a rubber-stamp of an agency's decision where it is not supported by substantial, credible evidence in the record as a whole or found to be arbitrary, capricious or unreasonable. *Ibid.; Marro v. Dep't of Civil Serv.,* 57 *N.J.Super.* 335, 346, 154 *A.*2d 733 (App.Div.1959).

The New Jersey Unemployment Compensation Law (UCL), *N.J.S.A.* 43:21–1 to –71 is a remedial act, the "primary objective of [which] . . . is to provide a cushion for the workers of New Jersey 'against the shocks and rigors' of unemployment." *Carpet Remnant Warehouse v. N.J. Dep't of Labor,* 125 *N.J.* 567, 581, 593 *A.*2d 1177 (1991) (quoting *Provident Inst. for Sav. in Jersey City v. Div. of Employment Sec.,* 32 *N.J.* 585, 590, 161 *A.*2d 497 (1960)). At the center of the UCL is the employer-employee

relationship. "Because the statute is remedial, its provisions [are to be] construed liberally, permitting a statutory employer-employee relationship to be found even though that relationship may not satisfy common-law principles." *Ibid.*

The UCL defines "employment" as "service . . . performed for remuneration under any contract of hire, written or oral, express or implied." *N.J.S.A.* 43:21–19(i)(1)(A). "Remuneration" is defined under the UCL as "all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash." *N.J.S.A.* 43:21–19(p). Under the UCL, there are twenty-six specific exclusions from the definition of employment. *N.J.S.A.* 43:21–19(i)(7). Once the Department of Labor and Workforce Development (Department) determines that the relationship between the claimant and the party to whom he or she rendered services is that of an employer-employee, and is not "statutorily excluded," then the party who received the services and is challenging the Department's classification must establish the existence of the three criteria of the ABC Test. *N.J.S.A.* 43:21–19(i)(6). Simply stated, a presumption is created by statute that all services performed by an individual for remuneration constitutes employment for purposes of the UCL unless the services are statutorily excluded, *N.J.S.A.* 43:21–19(i)(7), or the party that was determined to have acted as an employer proves that the services satisfied the ABC Test. *N.J.S.A.* 43:21–19(i)(6). The ABC Test provides:

Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter ([*N.J.S.A.* 43:21–1 to –71]) unless and until it is shown to the satisfaction of the division that:

(A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

[*N.J.S.A.* 43:21–19(i)(6)(A)(B)(C).]

The three prongs of the ABC Test are commonly referred to as the "control test," the "course-of-business or location-of-work test," and the "independent-business test," respectively. A party challenging a Department's classification must prove each of the three prongs of the ABC Test. *Carpet Remnant, supra,* 125 *N.J.* at 581, 593 *A.2d* 1177. "The failure to satisfy any one of the three criteria results in an 'employment' classification. That determination is fact-sensitive, requiring an evaluation in each case of the substance, not the form, of the relationship." *Ibid.* Here, the Board, after determining that none of the statutory employment exemptions were applicable, concluded that PNI failed to prove Prongs (A) and (C) of the ABC Test. PNI argues that the credible evidence in the record establishes otherwise. Although we are satisfied that PNI proved Prong (A) or "the control test" provision of the statute, we agree with the Board's decision that PNI failed to prove Prong (C) or the "independent-business test" provision of the statute.

In challenging the Board's determination that it failed to prove Prong (A), PNI argues that claimant "was free to engage anyone he wished to assist him with his newspaper delivery business or to substitute the services of another for his own at a payment he alone deemed appropriate." PNI contends that claimant "could agree to perform services for his customers other than the delivery of newspapers and to charge separately for his services." PNI asserts that claimant "could deliver other newspapers or periodicals to customers, including those of PNI's *direct competitors.*"

The Board counters that PNI failed to prove the "control test" under the statute. The Board argues that the record contains indicia of PNI's control over the claimant's work performance, contending that claimant was: 1) "assigned a territory in southern New Jersey" by PNI; 2) "required to pick up his newspapers at a [certain] distribution center"; 3) "given a specific requirement where the customer wished to have the newspaper delivered" on his or her property; 4) "to deliver the newspapers in a 'dry and

timely fashion'"; 5) "provided materials and received instructions on how to deliver the newspapers"; 6) "given plastic bags, in which he was to place the newspapers to prevent them from being soiled or damaged by rain or moisture"; and 7) "subject to a monthly report card issued by PNI[,] which rated his performance, primarily as it concerned customer complaints." As to this last factor, the Board asserts that under the Agreement:

[Claimant] could generate no more than two complaints per 1,000 copies of the Sunday paper and no more than one complaint per 1,000 copies of the daily paper. Any complaints were resolved "solely in the best judgment" of PNI. Where a subscriber complained to PNI that he or she did not receive a timely, dry[,] readable and/or complete newspaper and where PNI determined that [claimant] had to deliver a substitute copy, he would be charged $2.00 per paper. The record demonstrates that [claimant] had exceeded the number of allowable service complaint violations for much of the time that he was employed by PNI, which resulted in his being placed on probation for thirty days, and ultimately terminated.

Under Prong (A), the party challenging the employment relationship must show "that the provider of the services 'has been and will continue to be free of control or direction over the performance of such services.'" *Carpet Remnant, supra,* 125 *N.J.* at 582, 593 *A.*2d 1177 (quoting *N.J.S.A.* 43:21–19(i)(6)(A)). To meet that prong, the person challenging the employer-employee relationship "must establish not only that the employer has not exercised control in fact, but also that the employer has not reserved the right to control the individual's performance." *Ibid.* Some factors "indicative of control" may include, but are not limited to, "whether the worker is required to work any set hours or jobs, whether the enterprise has the right to control the details and the means by which the services are performed, and whether the services must be rendered personally." *Id.* at 590, 593 *A.*2d 1177. We are satisfied that PNI proved Prong (A).

We acknowledge that the issue of whether PNI proved Prong (A) should not be determined under the Agreement alone, but rather on all facts surrounding claimant's relationship with PNI, including the Agreement. To consider only the Agreement, and not the totality of the facts surrounding the parties' relationship, would be to place form over substance. *Electrolux Corp. v. Bd. of*

*Review,* 129 *N.J.L.* 154, 155, 28 *A.*2d 207 (E. & A.1942). Here, the Agreement and the testimony presented to the Appeal Tribunal did not establish that PNI had exercised the necessary degree of control over the manner in which claimant performed his work, justifying the Board's determination that PNI failed to prove Prong (A). Pursuant to the Agreement and the testimony presented to the Appeal Tribunal, claimant was required to deliver the newspapers on time and in a good and readable condition. However, claimant was permitted to perform the work by any means that he sought fit and in any sequence that he chose. He was not provided continuous training by PNI, and he was permitted to engage anyone he desired to assist him in his newspaper delivery service, provided he paid the third party. He was free to deliver newspapers or other periodicals of PNI's competitors, provided that such other deliveries did not interfere with him completing the delivery of PNI's newspapers or periodicals as referenced in the Agreement.

Moreover, we conclude that the fact proffered by the Board, concerning PNI's right to determine a material breach of the Agreement based on the number of complaints it receives from its customers, is not evidence that claimant was subject to PNI's direction, control, and supervision as to the manner in which the work was to be performed, but only evidence of PNI's method of assuring that claimant performed the work that he had agreed to perform under the Agreement, that is, "use [his] best efforts to deliver a dry and undamaged newspaper in a location convenient to the reasonable expectations of the subscriber" between certain hours of the day. *See Athol Daily News v. Bd. of Review,* 439 *Mass.* 171, 786 *N.E.*2d 365, 370–71 (2003).

Prong (C) or the "Independent–Business Test" provision of the statute requires that the party challenging the employer-employee relationship prove that "[s]uch [claimant] is customarily engaged in an independently established trade, occupation, profession or business." *N.J.S.A.* 43:21–19(i)(6)(C). PNI argues that claimant "maintained an independent business as required by

[Prong (C)] of the test" because claimant "was free to contract with other newspapers to perform delivery services both during the term of his contract with PNI and afterwards." We disagree.

Prong (C) of the statute has been construed to mean that the "trade, occupation, profession or business" of the claimant "was established independently of the employer or the rendering of the personal service forming the basis of the claim." *Gilchrist v. Div. of Empl. Sec.*, 48 *N.J.Super.* 147, 158, 137 *A.*2d 29 (App.Div.1957). "[T]he employee must be engaged in such independently established activity at the time of rendering the service involved." *Ibid.* The requirement that the claimant be customarily engaged in an independently-established trade, occupation, profession or business " 'calls for an enterprise that exists and can continue to exist independently of and apart from the particular service relationship. The enterprise must be one that is stable and lasting—one that will survive the termination of a relationship.' " *Carpet Remnant, supra,* 125 *N.J.* at 585, 593 *A.*2d 1177 (quoting *Gilchrist, supra,* 48 *N.J.Super.* at 158, 137 *A.*2d 29). If the claimant is "dependent on the employer, and on termination of that relationship would join the ranks of the unemployed, the [Prong (C)] standard is not satisfied." *Id.* at 585–86, 593 *A.*2d 1177. Stated another way, Prong (C) has been proven "when a person has a business, trade, occupation, or profession that will clearly continue despite termination of the challenged relationship." *Id.* at 586, 593 *A.*2d 1177.

In applying the above principles, we conclude that the record is devoid of evidence demonstrating that claimant was customarily engaged in an independently established trade or activity from the mere delivery of PNI's newspapers "at the time of rendering the service involved." *Gilchrist, supra,* 48 *N.J.Super.* at 158, 137 *A.*2d 29. Claimant never engaged in delivery services prior to commencing his delivery of newspapers for PNI, nor has he engaged in similar services since his termination from employment. Moreover, on termination from employment, claimant joined the ranks of the unemployed. Accordingly, Prong (C) was not satisfied.

*Carpet Remnant, supra,* 125 *N.J.* at 585–86, 593 *A.2d* 1177. To the extent not addressed here, PNI's remaining arguments are without sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(1)(E) [1].

---

[1] In support of its position that claimant was an independent contractor, not an employee, PNI included in its supplemental appendix a copy of a three-page document entitled: "GUIDELINES FOR AUDITS OF NEWSPAPER DELIVERERS." The Guidelines did not contain a source reference. On inquiry by the Appellate Division Clerk's Office, we were advised that the Guidelines were prepared by the Department following dialogue with the New Jersey Press Association, for the purpose of providing informal guidance in the application of the ABC Test to home delivery newspaper persons. The Guidelines were never formally adopted by rule and are not codified in the New Jersey Administrative Code. Moreover, the preamble to the Guidelines states in relevant part that the Department "remains steadfast ... that an independent contractor must satisfy the three conditions of the ABC Test. Independent contractor status is extended to those individuals who are truly established as an independent trade, profession, or business. When appearance suggests independence, but fact and substance indicates otherwise, fact will prevail." Because the Guidelines only represent a form of informal guidance to the newspaper industry, we determine the Guidelines not binding.