NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1581-15T2
GARDEN STATE FIREWORKS,
INC.,

 Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT OF
LABOR AND WORKFORCE
DEVELOPMENT,

 Respondent-Respondent.
___________________________

 Argued September 14, 2017 – Decided September 29, 2017

 Before Judges Alvarez, Currier, and Geiger.

 On appeal from the New Jersey Department of
 Labor and Workforce Development, Agency Docket
 No. 13-005.

 August N. Santore, Jr., argued the cause for
 appellant.

 Alan C. Stephens, Deputy Attorney General,
 argued the cause for respondent (Christopher
 S. Porrino, Attorney General, attorney;
 Melissa H. Raksa, Assistant Attorney General,
 of counsel; Mr. Stephens, on the brief).

PER CURIAM

 Plaintiff Garden State Fireworks, Inc. is a New Jersey

corporation that manufactures, stores and sells fireworks, and
facilitates firework shows; pyrotechnicians are hired to conduct

and shoot the fireworks at the shows or displays. The New Jersey

Department of Labor and Workforce Development (the Department)

conducted a routine audit of the company and determined that

plaintiff had improperly classified some of the pyrotechnicians

it hired to run fireworks displays as independent contractors

rather than employees. As a result, the Department ordered

plaintiff to pay unemployment compensation and disability

contributions for these technicians. Plaintiff appealed, and the

Department's order was reversed after trial in the Office of

Administrative Law (OAL). However, in a final administrative

action, the Commissioner of the Department reversed the

Administrative Law Judge's (ALJ) order, finding that the

pyrotechnicians should be classified as employees of the company,

not independent contractors. After a review of plaintiff's

arguments, in light of the record and applicable principles of

law, we reverse.

 Following a routine audit, the Department advised plaintiff

that it owed $30,167.30 for unemployment compensation and

disability contributions it had not paid for certain individuals

it had classified as independent contractors and not employees of

the company. After plaintiff requested a hearing, the matter was

transferred to the OAL for further proceedings.

 2 A-1581-15T2
 During the hearing, the Department presented its auditor,

Carol Balfour. Balfour testified that she reviewed the business

records of the company and noted that the pyrotechnicians hired

by plaintiff to conduct the fireworks displays were listed on 1099

forms as "subcontractors." She sent out letters to the

"subcontractors" requesting additional information. Balfour

applied the statutory "ABC test"1 and determined that the

pyrotechnicians did not meet the requirements of the test.

Specifically, the auditor concluded that plaintiff directly

controlled the pyrotechnicians' activities, employed staff members

who performed the same services, and offered no proof that the

pyrotechnicians were in an independently established occupation

or profession. As a result, Balfour categorized the

pyrotechnicians as employees and found plaintiff liable for

various unpaid contributions.

 Nunzio Santore, Jr., one of plaintiff's co-owners, testified

that the company has twenty-five to thirty-five full and part-time

employees who work at its facility doing light manufacturing,

sorting, assembling, and packing of fireworks. When a display is

ordered for a specific show, the employees pack the selected

1
 N.J.S.A. 43:21-19(i)(6)(A)-(C) is the statute that governs the
determination of whether an individual is classified as an employee
or independent contractor. It is commonly referred to as the "ABC
test."

 3 A-1581-15T2
fireworks onto trucks. A pyrotechnician is then hired for the

specific show. The technician comes to the facility to pick up

the packed truck and drives it to the site. The technician sets

up the show, shoots off the fireworks and cleans up after the

show, returning the empty truck to plaintiff's facility.

 Not surprisingly, plaintiff is busiest between Memorial Day

and Labor Day, with eighty percent of its business taking place

in the week surrounding July 4th. Several of the full-time

employees of the company also perform fireworks displays. Those

individuals receive a W2 form and are paid on the payroll with the

required tax contributions.

 Santore described the pyrotechnicians who receive 1099s as

individuals who only work one to three days a year for the company.

Almost all of the pyrotechnicians are in a full-time occupation

or business and come from a variety of backgrounds, including

doctors, teachers, firefighters, and policemen. According to

Santore, on July 4th, the company uses more than one hundred

technicians in firework displays all over the State. Although he

occasionally goes to a site to check on a crew, neither he nor

anyone else at the company supervises the pyrotechnicians. They

receive a flat fee for each show they perform.

 Santore also informed the ALJ that plaintiff carries workers

compensation and general liability insurance coverage for the

 4 A-1581-15T2
pyrotechnicians as well as its W2 employees. In his experience

of running the business for over forty years, Santore stated that

he has never had a pyrotechnician file an unemployment claim.

 Several pyrotechnicians also testified as witnesses for

plaintiff. Daniel Papa, a full-time police officer, stated that

he has set up and run fireworks displays for plaintiff. He advised

that plaintiff's employees have never directed him as to how to

set up the displays, which fireworks to launch, when to launch,

or specified the length of the fireworks display. Papa denied

ever seeking or expecting unemployment compensation from

plaintiff.

 Lawrence Neville, owner of a lawn care company, testified

that he had performed three or four fireworks displays per year

for plaintiff for the past ten to twelve years. He also stated

that plaintiff has never directed him as how to perform the

fireworks displays. He denied ever working in the plant. Neville

added that he did not expect that he could file for unemployment

compensation at the conclusion of a fireworks show.

 Anthony Brown testified that he worked full time as a

landscaper and performed several fireworks displays yearly for

plaintiff. Like the other pyrotechnicians, Brown stated that if

he ceased doing the fireworks displays, there would be no impact

on his income or lifestyle.

 5 A-1581-15T2
 Plaintiff's accountant, Generoso Romano, testified that he

worked with plaintiff during an Internal Revenue Service (IRS)

audit for the tax years of 2006 through 2010. The audit included

a review of the 1099s that had been issued to the pyrotechnicians

and their classification as "independent contractors." Following

the completion of the audit, the IRS sent plaintiff a Form 886-A,

advising that after reviewing plaintiff's 1099s, it "determined

that we will not change the status of the pyrotechnicians you paid

as independent contractors. These workers meet the safe harbor

provisions of industry practice under Section 530 of the Revenue

Act of 1978 based on the study done by the American Pyrotechnics

Association." Based on the IRS's determination, Romano testified

that plaintiff felt "comfortable . . . in treating [the

pyrotechnicians] as independent contractors[.]" The American

Pyrotechnics Association study was admitted into evidence.

 In April 2015, ALJ Mumtaz Bari-Brown issued a written,

comprehensive decision, finding that the pyrotechnicians hired by

plaintiff were independent contractors, thus reversing the

Department's determination. The ALJ informed that the matter was

governed by the statutory "ABC test" under N.J.S.A. 43:21-

19(i)(6)(A)-(C). She also relied on case law application of the

statute, including Carpet Remnant Warehouse, Inc. v. Dep't of

Labor, 125 N.J. 567 (1991). In that case, the Court was asked to

 6 A-1581-15T2
determine whether carpet installers that performed services for a

carpet distributor were independent contractors. Carpet Remnant,

supra, 125 N.J. at 571. The Court confirmed that the ABC test was

the governing statute. Id. at 582.

 The ABC test becomes applicable only after a determination

that the service provided constitutes "employment," which is

defined as "service . . . performed for remuneration or under any

contract of hire, written or oral, express or implied." N.J.S.A.

43:21-19(i)(1)(A). "If the Department determines that the

relationship falls within that definition, and is not statutorily

excluded, see N.J.S.A. 43:21-19(i)(7), then the party challenging

the Department's classification must establish the existence of

all three criteria of the ABC test." Carpet Remnant, supra, 125

N.J. at 581. Those criteria are:

 (A) Such individual has been and will
 continue to be free from control or direction
 over the performance of such service, both
 under his contract of service and in fact; and

 (B) Such service is either outside the usual
 course of the business for which such service
 is performed, or that such service is
 performed outside of all the places of
 business of the enterprise for which such
 service is performed; and

 (C) Such individual is customarily engaged
 in an independently established trade,
 occupation, profession or business.

 [N.J.S.A. 43:21-19(i)(6)(A)-(C)].

 7 A-1581-15T2
 The failure to satisfy any one of the three criteria results

in an "employment" classification. That determination is fact-

sensitive, requiring an evaluation in each case of the substance,

not the form, of the relationship. Carpet Remnant, supra, 125

N.J. at 581. The ABC test determines whether employers and

employees are obligated to pay unemployment compensation taxes as

well as whether workers are eligible to receive unemployment

benefits. Id. at 582.

 The ALJ addressed each prong of the test individually.

Regarding prong "A," the judge found:

 The credible evidence supports that
 Garden State's subcontractors are free from
 control or direction over the performance of
 their services. The subcontractors have
 discretion to determine the duration and
 pattern of fireworks displays, they are paid
 by the show, they are free to work as much or
 as little as each subcontractor chooses, they
 are generally not supervised by Garden State,
 and they are free to work for Garden State's
 competitors. Therefore, I CONCLUDE that
 Garden State established that the
 subcontractors have "been and will continue
 to be free from control or direction over the
 performance of such service." N.J.S.A. 43:21-
 19(i)(6)(A).

 The ALJ also found that the pyrotechnicians satisfied prong

"B" of the ABC test. Unlike plaintiff's full-time workers, the

technicians did not work at plaintiff's factory. All three

technicians who testified said that their only contact with

 8 A-1581-15T2
plaintiff was picking up materials and filling out some initial

paperwork for their fireworks displays. Furthermore, plaintiff's

factory workers performed different services than the technicians'

services at the fireworks display site. The judge concluded:

 I am persuaded by the credible evidence
 presented by Garden State that the
 subcontractors perform services outside of all
 the employer's places of business. Therefore,
 I CONCLUDE that Garden State satisfied Prong
 B, and established that the services are
 "performed outside of all the places of
 business of the enterprise for which said
 service[s] [are] performed."

 In addressing prong "C," the ALJ pointed out that none of the

contractors relied on plaintiff for their income, nor had any of

them ever applied for unemployment or disability benefits. The

judge found it irrelevant that the technicians did not maintain

independent pyrotechnic companies. She explained that the statute

only requires that the contractor be "customarily engaged in an

independently established trade, occupation, profession or

business[;]" it does not require that the independently

established business be part of the same industry. Based on the

technicians' testimony, the judge also concluded that it would not

have been practical for any of the individuals to form an

independent business to display fireworks only once or twice per

year. Therefore, the judge found:

 9 A-1581-15T2
 Garden State's subcontractors are customarily
 engaged in an independently established trade,
 occupation, profession or business. Indeed,
 they are employed full-time and part-time in
 other industries and professions. Moreover,
 I am persuaded by the credible evidence
 presented by petitioner that if the
 subcontractors were to suffer a loss of income
 from Garden State it would not significantly
 impact their financial situation or
 necessitate an application for unemployment
 benefits.

As plaintiff met its burden of providing evidence sufficient to

meet all three prongs, the ALJ concluded that the pyrotechnicians

were independent contractors, and she, therefore, reversed the
 2
Department's determination.

 In a final administrative action, the Department disagreed

with the ALJ's conclusions. The Commissioner asserted that the

ALJ misunderstood the holding in Carpet Remnant and incorrectly

concluded that plaintiff met all three prongs of the ABC test,

particularly prong "C." In discussing prong "C," the Commissioner

stated that:

 [T]he requirement that a person be customarily
 engaged in an independently established trade,
 occupation, profession or business calls for
 an "enterprise" or "business" that exists and
 can continue to exist independently of and
 apart from the particular service

2 The ALJ considered the IRS's classification of the
pyrotechnicians as independent contractors. While recognizing the
determination was neither "controlling [n]or dispositive," she
found the determination could, however, suggest that her
conclusion was not unreasonable.

 10 A-1581-15T2
 relationship. Multiple employment, such as
 that relied upon by the ALJ in support of her
 conclusion relative to Prong "C" of the ABC
 test, does not equate to an independently
 established enterprise or business.

 The Department also found that plaintiff had not met prongs

"A" and "B" as plaintiff controlled all of the pyrotechnicians,

and all of the sites of fireworks displays are integral parts of

its business. The Commissioner rejected the ALJ's determination

and ordered plaintiff to remit the unpaid unemployment and

temporary disability contributions.

 Plaintiff now appeals from the Department's determination,

asserting that it erred in its application of the ABC test.

 We are mindful that we have a limited role in reviewing

decisions of an administrative agency. Philadelphia Newspapers,

Inc. v. Bd. of Review, 397 N.J. Super. 309, 317 (App. Div. 2007)

(citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562

(1963)). "Therefore, if, in reviewing an agency decision, an

appellate court finds sufficient, credible evidence in the record

to support the agency's conclusions, that court must uphold those

findings even if the court believes that it would have reached a

different result." Id. at 318 (citing Clowes v. Terminix Int'l,

Inc., 109 N.J. 575, 588 (1988)).

 "Conversely, a reviewing court is not bound to uphold an

agency determination unsupported by sufficient evidence." Ibid.

 11 A-1581-15T2
(citing Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

We do not act simply as a rubber stamp of an agency's decision

where it is not supported by substantial, credible evidence in the

record as a whole or it is arbitrary, capricious or unreasonable.

Ibid.

 To satisfy prong "A," plaintiff must show that the "individual

has been and will continue to be free from control or direction

over the performance of such service, both under his contract of

service and in fact[.]" N.J.S.A. 43:21-19(i)(6)(A). This prong

requires a company to establish not only that it "has not exercised

control in fact, but also that the employer has not reserved the

right to control the individual's performance." Carpet Remnant,

supra, 125 N.J. at 582. Factors indicative of control include:

"whether the worker is required to work any set hours or jobs,

whether the enterprise has the right to control the details and

the means by which the services are performed, and whether the

services must be rendered personally." Philadelphia Newspapers,

supra, 397 N.J. Super. at 321 (quoting Carpet Remnant, supra, 125

N.J. at 590).

 Here, plaintiff provided the technicians with the required

supplies and then gave them virtually complete control over the

performance of the fireworks displays. The technicians testified

that none of plaintiff's employees directed them as to which

 12 A-1581-15T2
fireworks to launch, when to launch, or how to set up the displays.

The Department's determination that plaintiff controlled the

technicians' performance lacks fair support in the evidence. See

Philadelphia Newspapers, supra, 397 N.J. Super. at 323 (concluding

"the record is devoid of evidence demonstrating that claimant was

customarily engaged in an independently established trade or

activity from the mere delivery of [the company's] newspapers 'at

the time of rendering the service involved'").

 Prong "B" requires a showing that the services are outside

of either the employer's usual course of business or all of the

employer's places of business. Carpet Remnant, supra, 125 N.J.

at 584. The Department concluded that plaintiff's places of

business included everywhere it conducted a fireworks display. As

the Court stated in Carpet Remnant, such a definition of "place

of business" would render a person's ability to satisfy the

alternative standard of prong "B" "practically impossible." Id.

at 592. The Court, therefore, refined the standard to refer "only

to those locations where the enterprise has a physical plant or

conducts an integral part of its business." Ibid. The Court

determined that the residences of all of the claimant's customers

where carpet was installed were "clearly 'outside of all [its]

place of business.'" Ibid. (quoting N.J.S.A. 43:21-19(i)(6)(B)).

Here, we can similarly conclude that the Department's broad

 13 A-1581-15T2
interpretation of "place of business" was not supported by prior

judicial considerations of the statute and would render this

required prong meaningless as the standard could never be met. We

are satisfied that the pyrotechnicians' work conducted entirely

at locations outside of plaintiff's primary plant satisfied prong

"B."

 In its discussion of the ALJ's determination of prong "C,"

the Department declared it to be "fatally flawed." We disagree.

This prong is satisfied "when a person has a business, trade,

occupation, or profession that will clearly continue despite

termination of the challenged relationship." Philadelphia

Newspapers, supra, 397 N.J. Super. at 323. If the person is so

"dependent on the employer" that upon "termination of that

relationship" he would "join the ranks of the unemployed," then

the prong would not be satisfied. Carpet Remnant, supra, 125 N.J.

at 585-86.

 Here, the record revealed that the pyrotechnicians were all

either retirees or full-time employees outside of their work for

plaintiff. Although only three of the more than one hundred

pyrotechnicians testified, the parties agreed that their testimony

constituted a wholly representative sample of the technicians.

All three of the technicians that testified stated that they did

not rely on plaintiff as their primary source of income and would

 14 A-1581-15T2
never have expected unemployment compensation from plaintiff.

Santore testified that he had never had a pyrotechnician request

or even inquire about receiving unemployment compensation after

the fireworks shows were completed. The technicians only performed

services for plaintiff during one or two weeks of each year, and

none of them relied on plaintiff as the main source of their

income. We are satisfied that the Department erroneously applied

prong "C" as interpreted by the governing case law.

 As we have stated, the ABC test is fact-sensitive. We look

to the substance of the relationship, not solely its form. See

Carpet Remnant, supra, 125 N.J. at 581. Here, it is difficult to

conceive that an individual who does work for a company one to

three days a year, while working full-time in another profession,

could be reasonably considered an employee of that company. As

the Court stated in Carpet Remnant, "in cases in which satisfaction

of the C standard convincingly demonstrates a person's

ineligibility for unemployment benefits, it would be inappropriate

for the Commissioner to apply the A or B tests restrictively and

mechanically if their applicability is otherwise uncertain." Id.

at 590.

 Based on our review of the record, we find insufficient

evidence to support the Commissioner's determination that the

 15 A-1581-15T2
pyrotechnicians did not meet the ABC test. We, therefore, reverse

the Department's determination.

 Reversed.

 16 A-1581-15T2