**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1197-19

J.G.,[1]

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued August 17, 2021 – Decided September 3, 2021

Before Judges Gilson and Gummer.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. x-xx-xx295.

Timothy J. Prol argued the cause for appellant (Alterman & Associates, LLC, attorneys; Stuart J. Alterman, Arthur J. Murray and Timothy J. Prol, on the briefs).

---

[1] We use initials to identify appellant to protect the privacy of appellant and his wife and given the domestic-violence allegations. See <u>R.</u> 1:38-3(c)(9).

Thomas R. Hower, Staff Attorney, argued the cause for respondent (Robert Seymour Garrison, Jr., Director of Legal Affairs, PFRSNJ, attorney; Thomas R. Hower, on the brief).

PER CURIAM

Appellant J.G., a former Brooklawn Police Department officer, appeals from an October 8, 2019 final administrative determination by the Board of Trustees of the Police and Firemen's Retirement System (Board), denying his application for accidental disability retirement benefits.[2] Appellant argues, among other things, the Board erred in finding that the incidents on which he relies did not directly cause his disability. Because the Board's decision was supported by substantial credible evidence in the record, we affirm.

I.

After working as an officer at the Camden County Department of Corrections for almost four years, appellant became a police officer with the Brooklawn Police Department on February 1, 2006. On December 3, 2013, appellant applied for accidental disability retirement benefits based on three incidents, occurring on April 17, 2009, May 24, 2011, and September 3, 2011,

---

[2] Appellant also listed in his notice of appeal an August 1, 2019 initial decision of an administrative law judge (ALJ). The Board adopted the initial decision in its October 8, 2019 final administrative determination, which appellant also appeals. We review only the final agency decision of the Board.

2

A-1197-19

that allegedly caused him to suffer post-traumatic stress disorder (PTSD) and rendered him disabled and unable to perform his job. On March 9, 2015, the Board granted him ordinary disability but denied his application for accidental disability benefits. The Board determined appellant was "disabled due to other medical reasons," not the three incidents on which he based his application, and that his disability "is the result of a pre-existing disease alone or a pre-existing disease that is aggravated or accelerated by the work effort."[3]

Appellant administratively appealed, and the matter was transferred to the Office of Administrative Law as a contested case for an evidentiary hearing. An ALJ conducted hearings on February 1 and 22, 2017, and April 27, 2018. Three witnesses testified: appellant; his expert witness, psychiatrist Joel Bennett Glass; and the Board's expert witness, psychologist Daniel B. LoPreto.

In addition to testifying about his father's alcoholism, his sister's substance-abuse problem, his alcoholism and on-going consumption of alcohol, a domestic-violence charge against him for which he was suspended without pay from July 22, 2012, to October 13, 2012, and his participation in a thirty-day, out-of-state rehabilitation program in May 2013, appellant testified about the

---

[3] The Board made additional findings regarding the alleged incidents, unrelated to its finding of causation.

three incidents on which he based his application. In the April 17, 2009 incident, appellant responded to a domestic call in which another officer, who was appellant's cousin, was confronting a suspect holding a knife. Noting the presence of the suspect's mother in a trailer the suspect had entered, the appellant described the incident as a "hostage situation." After other officers, including appellant's supervisor, arrived on the scene, the suspect's mother was removed from the trailer "so she wasn't part of the problem anymore." Appellant told her "everything was going to be okay" and "[w]e just want to get him help." The suspect subsequently died after being shot on the scene. Appellant felt he had failed the suspect's mother. He had nightmares; he started going out with co-workers and drinking alcohol more than he had previously; he started drinking at home; and his relationship with his family deteriorated.

In the May 24, 2011 incident, appellant responded to an apartment-complex fire. After a woman advised appellant her husband was inside, he attempted unsuccessfully to enter the building. He went back in with a supervisor, discovered a bed already in flames, and did not see the woman's husband, who ultimately died in the fire. Appellant again felt he had failed in his duty. He began to drink alcohol more, and his home life further deteriorated.

A-1197-19

In the September 3, 2011 incident, appellant pursued and confronted a suspect who was smoking marijuana. The suspect drew a blade; appellant drew his firearm. The suspect's family was nearby behind a door. After the suspect dropped his blade, appellant reholstered his firearm, had a physical altercation with the suspect, and apprehended him, injuring the suspect's wrist in the process. After the altercation, appellant inspected the blade and recognized the risk to his life. Soon after this incident, appellant decided he could no longer perform his duties without posing a risk to himself or other officers. Appellant's expert, Dr. Glass, opined appellant suffered from PTSD that was related to the three incidents cited by appellant.

The Board's expert, Dr. LoPreto, agreed appellant was disabled but found his alcoholism, not the three incidents, was the "significant and substantial cause" of his disability. Dr. LoPreto testified appellant had told him he left work in May 2013 because he "was drinking a lot" and was "signing [him]self into rehab" after his wife told him she would leave with their children if he did not seek help and that he did not return to work after he completed the rehabilitation program because "that's when we made a decision to talk to an attorney to see what I could do." According to Dr. LoPreto, appellant acknowledged he had stated previously he was self-medicating but told Dr. LoPreto "[t]hat's really not

true."  Dr. LoPreto recognized the possibility of PTSD from the three incidents but did not "see a diagnosis of PTSD being directly attributable to these three incidents."  He testified that "to the extent that there [were] some post traumatic stress disorder symptoms present, . . . there were other alternative explanations for that diagnosis."  Considering appellant's family history of an alcoholic father, appellant's and his wife's resort to alcohol, and appellant's domestic-violence episodes, Dr. LoPreto opined appellant's psychological conditions pre-existed the three incidents on which appellant relied in support of his application and could not be attributed directly to those incidents.

The ALJ concluded appellant had not proved the three incidents caused his disability or that his disability was "not a pre-existing disease, aggravated by the work effort."  The ALJ held:  "petitioner identified three events which aggravated his mental condition and arguably led to his alcoholism; however, it cannot be said that the injury is not the result of petitioner's pre-existing condition or pre-existing condition aggravated by the work effort."  Although he did not dispute appellant suffers from PTSD, the ALJ found Dr. Glass's opinion "directly relating to the three identified incidents as the direct cause [was] not sufficiently supported by his report or testimony."  The ALJ also concluded Dr. Glass had failed to address sufficiently appellant's alcoholism as

6

a pre-existing disease, accepted without challenge appellant's representation he did not excessively drink before the 2009 incident, and failed to review the criteria necessary for an accidental disability retirement benefit determination. The ALJ found appellant's "frequent domestic violence issues further [brought] into question the direct causes of [appellant's] mental state and whether such actions pre-existed even the 2009 incident[]." He found Dr. LoPreto's opinion was supported by the record evidence, including appellant's family history, his and his wife's use of alcohol, and the domestic-violence incidents.[4]

Appellant filed exceptions with the Board. After reviewing the record, the Board adopted the ALJ's decision, granting appellant ordinary disability but denying him accidental disability retirement benefits. Appellant appeals from the Board's decision.

## II.

On appeal, appellant argues the Board's adoption of the ALJ's initial decision was arbitrary, capricious, and unreasonable and was not supported by the credible evidence in the record, which, according to appellant, established

---

[4] The ALJ also rendered opinions about certain aspects of the three incidents, unrelated to his conclusion about causation.

his disability was caused by the three incidents he cited, entitling him to accidental disability retirement benefits. Unpersuaded, we affirm.[5]

Our review of an administrative agency determination is limited. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). We will sustain a board's decision "'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)); see also J.K. v. N.J. State Parole Bd., 247 N.J. 120, 135 (2021). Under this standard our review is guided by three inquiries: "(1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Conley v. N.J. Dep't of Corr., 452 N.J. Super. 605, 613 (App. Div. 2018).

We are not bound by an agency's statutory interpretation or other legal determinations. Russo, 206 N.J. at 27. Nevertheless, we accord deference to statutory interpretation by the agency charged with enforcing the statute.

---

[5] Appellant also complains about the timing of the ALJ's initial decision. We find insufficient merit in that argument to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E)

Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475-76 (2019). "Such deference has been specifically extended to state agencies that administer pension statutes" because "'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting In Re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)).

"[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985); see also Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004). "Where . . . the determination is founded upon sufficient credible evidence seen from the totality of the record and on that record findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980).

Appellant is a member of the Police and Firemen's Retirement System. That pension plan grants accidental disability retirement benefits if "the member is permanently and totally disabled as a direct result of a traumatic event

9

occurring during and as a result of the performance of his regular or assigned duties." N.J.S.A. 43:16A-7(a)(1). Accordingly, a claimant seeking accidental disability retirement benefits must prove five factors:

1.    that he is permanently and totally disabled;

2.    as a direct result of a traumatic event that is

      a.    identifiable as to time and place,
      b.    undesigned and unexpected, and
      c.    caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3.    that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4.    that the disability was not the result of the member's willful negligence; an[d]

5.    that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 212-13 (2007).]

See also Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 421 (2018). If the Board finds a claimant "is not eligible for accidental disability since the incapacity is not a direct result of a traumatic event occurring during and as a result of the performance of the [claimant's] regular or assigned duties,"

10                                                                    A-1197-19

the claimant "will be retired on an ordinary disability retirement allowance." Mount, 233 N.J. at 419 n.4 (quoting N.J.A.C. 17:4-6.7). The "direct result" requirement was intended "to impose a more exacting standard of medical causation." Gerba, 83 N.J. at 185. When an underlying condition is aggravated by the trauma, the resulting disability is not accidental. Id. at 186. The traumatic event must "constitute[] the essential significant or the substantial contributing cause of the resultant disability." Ibid.

In Patterson v. Board of Trustees, State Police Retirement System, 194 N.J. 29, 33 (2008), the Court determined the standard governing a claim for accidental disability retirement benefits premised on "a permanent mental disability as a result of a mental stressor, without any physical impact." Following the "direct result" requirement in N.J.S.A. 43:16A-7(a)(1) and Richardson, the Court in Patterson held a claimant making a claim premised on "a permanent mental disability as a result of a mental stressor, without any physical impact" had to prove his disability "result[ed] from direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person." Id. at 33-34. In Mount, 233 N.J. at

423-24, the Court described that causation question as the "threshold inquiry" in claims premised on mental disability.

And that threshold inquiry is the central issue in this case: whether appellant's disability is a direct result of the three incidents or the result of a pre-existing condition, his alcoholism. The Board adopted the initial decision of the ALJ, who had concluded appellant failed to prove the incidents had directly caused his disability. In reaching that conclusion, the ALJ properly considered appellant's testimony, the testimony of both experts, and the experts' opinions. The ALJ accepted and found more persuasive the conclusions of Dr. LoPreto, not the conclusions of Dr. Glass. The ALJ did not credit Dr. Glass's opinion as to direct causation, finding it was "not sufficiently supported by his report or testimony."

With regard to expert witnesses, we rely on the Board's adoption of the ALJ's "acceptance of the credibility of the expert's testimony and the [judge's] fact-findings based thereon, noting that the [judge] is better positioned to evaluate the witness'[s] credibility, qualifications, and the weight to be accorded [to his] testimony." In re Guardianship of D.M.H., 161 N.J. 365, 382 (1999); see also City of Long Branch v. Liu, 203 N.J. 464, 491 (2010) (explaining the fact finder has the role of assessing the credibility and weight to be given to

12

expert testimony); Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961) (finding "credibility of [an] expert and the weight to be accorded his testimony rest in the domain of the trier of fact").

The vast majority of appellant's argument is based on his disagreement with the Board's and the ALJ's particular findings regarding certain aspects of the three incidents. We need not reach those issues given appellant's failure to prove the threshold issue of direct causation. As to that threshold issue, appellant argues the ALJ's and Board's finding that his alcoholism, not the three incidents, caused his disability was wrong. Appellant would have us reject that finding and accept Dr. Glass's testimony over Dr. LoPreto's testimony, even though the Board and the ALJ clearly found Dr. LoPreto's testimony to be more persuasive than Dr. Glass's testimony. That is not our role. It is not our place to second guess or substitute our judgment for that of the ALJ or the Board; we do not "engage in an independent assessment of the evidence as if [we] were the court of first instance." State v. Locurto, 157 N.J. 463, 471 (1999); see also Philadelphia Newspapers, Inc. v. Bd. of Rev., 397 N.J. Super. 309, 317 (App. Div. 2007) (holding "[t]here should not be an independent assessment of the evidence by the appellate court").

We are satisfied that threshold factual finding – the direct cause of appellant's disability was his alcoholism and not the three incidents – is supported by substantial credible evidence in the record, including the testimony and opinions of Dr. LoPreto and appellant's testimony. The Board adopted the ALJ's direct-causation finding, which was based on his review of the evidence and assessment of the testimony of the witnesses and the weight to be given to the experts' opinions. We must give appropriate deference to that finding. We discern nothing arbitrary, capricious, or unreasonable about the Board's ruling, which was supported by substantial credible evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1197-19